73 P.3d 971 (2003)
2003 UT App 215
N.D., Petitioner and Appellee,
v.
A.B., Respondent and Appellant.
No. 20010880-CA.
Court of Appeals of Utah.
June 26, 2003.
*972 Andrew B. Berry Jr., Moroni, for Appellant.
Katherine Smith and Amy L. Clayton, Abbott, Spencer & Smith, LLC, Provo, for Appellee.
Martha Pierce, Salt Lake City, and D. Michael Jorgensen, Salina, Guardians Ad Litem.
Before BILLINGS, Associate P.J., DAVIS, and ORME, JJ.

OPINION
DAVIS, Judge:
¶ 1 A.B. (Stepfather) appeals from a protective order issued by the trial court against him pursuant to Utah Code Ann. § 30-6-2(1) (1998). We reverse.

BACKGROUND
¶ 2 "We recite only those facts pertinent to disposition of this appeal." Maxfield v. Rushton, 779 P.2d 237, 238 (Utah Ct.App. 1989).
¶ 3 N.D. (Father) and L.B. (Mother) were married on November 29, 1991, and K.D. (the Child) was born as issue of their marriage on April 6, 1994. Father and Mother divorced on April 30, 1996 and, as part of the divorce decree, Mother was awarded sole custody of the Child and Father was given reasonable rights of visitation.
¶ 4 Thereafter, Father married A.D. (Stepmother) and Mother married Stepfather. In accordance with the April 30, 1996 divorce decree between Father and Mother, Mother *973 retained sole custody of the Child and, as a result, the Child resided with Mother and Stepfather. Father continued to exercise his reasonable rights of visitation with the Child.
¶ 5 On June 25, 2001, Father petitioned for a protective order on behalf of the Child against Mother and Stepfather. In the petition, Father asserted that the Child had "disclosed to her [F]ather, [Stepmother,] and [the Division of Child and Family Services] that [Stepfather] is masturbating in front of her." Father also asserted that on a prior occasion, which allegedly occurred in March 1997 (the March 1997 incident), Father and Stepmother "observed [Stepfather] through a window in the home masturbating when they arrived to pick up [the Child]." During the period between the March 1997 incident and Father's filing of the petition for the protective order on June 25, 2001, Father continued to exercise his reasonable rights of visitation with the Child, which included returning the Child after visitation to reside with Mother and Stepfather in the home where the March 1997 incident occurred.
¶ 6 On July 10, 2001, an initial hearing was held on the petition for the protective order. At this hearing, the trial court dismissed Mother from the petition and appointed a guardian ad litem for the Child. A four-day bench trial was then held on the petition for the protective order on August 8, 27, 28, and 29, 2001.
¶ 7 Throughout the trial, conflicting evidence was received regarding the March 1997 incident. Father presented evidence that he and Stepmother personally observed the March 1997 incident. Stepfather presented evidence indicating that the March 1997 incident never occurred.
¶ 8 On the third day of the trial, the guardian ad litem for the Child sought to introduce a videotaped interview performed by the Division of Child and Family Services (DCFS) with the Child (Exhibit # 20) into evidence.[1] Stepfather objected to admission of the Child's out-of-court statements contained in Exhibit # 20 on the basis that they were inadmissible hearsay. The court ruled that the statements contained in Exhibit # 20 were admissible under rule 803(24) of the Utah Rules of Evidence. There was no other direct, admissible evidence presented at trial that supported the alleged events involving Stepfather described by the Child in Exhibit # 20.
¶ 9 The trial court entered a signed ruling on the petition for the protective order and issued a protective order against Stepfather on October 8, 2001, pursuant to Utah Code Ann. § 30-6-2(1) (1998). Stepfather now appeals.

ISSUES AND STANDARDS OF REVIEW
¶ 10 Although Stepfather identifies many issues in his brief,[2] this case turns on the first two issues.[3]
¶ 11 First, Stepfather contends that the trial court erred by concluding that the Child's hearsay statements contained in Exhibit *974 # 20 were admissible, despite Stepfather's objections, under rule 803(24) of the Utah Rules of Evidence. Our determination of whether the Child's out-of-court statements contained in Exhibit # 20 are admissible under rule 803(24) involves applying the legal requirements of the rule to the out-of-court statements. Cf. State v. Webster, 2001 UT App 238, ¶ 9, 32 P.3d 976 (articulating same required determination for review of "fact sensitive" hearsay admissibility decision under statement against interest exception contained in rule 804(b)(3) of the Utah Rules of Evidence).
"In the abstract, the effect of a given set of facts is a question of law and, therefore, one on which an appellate court owes no deference to a trial court's determination." In applying some legal rules, however, we nonetheless allow trial courts a measure of discretion in applying given facts to the articulated legal standard.
Id. (quoting State v. Pena, 869 P.2d 932, 936 (Utah 1994)). Because an admissibility decision under rule 803(24) requires the application of facts to the legal requirements of the rule, we recognize that the trial court has some discretion in making this determination. Cf. id. (granting trial court "corresponding measure of discretion" in making its "fact sensitive" hearsay admissibility determination under statement against interest exception contained in rule 804(b)(3) of the Utah Rules of Evidence).
¶ 12 Second, Stepfather argues that there was insufficient evidence to support the trial court's issuance of the protective order against him pursuant to Utah Code Ann. § 30-6-2(1) (1998).
The legal sufficiency of the evidence is determined by the standard set out in civil rule 52(a), which provides: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Reid v. Mutual of Omaha Ins. Co., 776 P.2d 896, 899 (Utah 1989) (quoting Utah R. Civ. P. 52(a)). We will determine that a trial court's finding of fact is clearly erroneous and "reverse[ ] only where the finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." ProMax Dev. Corp. v. Mattson, 943 P.2d 247, 255 (Utah Ct.App. 1997).

ANALYSIS

I. Admissibility of Exhibit # 20
¶ 13 Stepfather asserts that the trial court erred by concluding that the Child's out-of-court statements contained in Exhibit # 20 were admissible into evidence pursuant to rule 803(24) of the Utah Rules of Evidence. Rule 803(24) provides that the following type of out-of-court statement is "not excluded by the hearsay rule, even though the declarant is available as a witness":
A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interests of justice will best be served by admission of the statement into evidence.[4]
Utah R. Evid. 803(24). The Utah Supreme Court has stated that rule 803(24) "was intended for use in those rare cases where, although the out-of-court statement does not fit into a recognized exception, its admission is justified by the inherent reliability of the statement and the need for its admission." State v. Nelson, 777 P.2d 479, 482 (Utah 1989).
*975 ¶ 14 The bulk of the trial court's findings entered in support of its rule 803(24) admissibility decision purport to determine that the Child's statements in Exhibit # 20 are "reliable and trustworthy," presumably to satisfy the rule 803(24) requirement of "equivalent circumstantial guarantees of trustworthiness." Utah R. Evid. 803(24). However, most of these findings have very little, if anything, to do with the requirements of rule 803(24). Moreover, the amount of support that these findings lend to the trial court's decision to admit Exhibit # 20 is ambiguous, at best, because many of them cut both against and in favor of admissibility. For example, the trial court entered the following findings: (1) that the Child's mistake of four days regarding the date of the interview was "not such an aberration as to in itself affect [the Child's] credibility and [ ] maturity"; (2) that the Child knew "the difference between the truth and a lie," and that the Child's "answers were spontaneous for the most part and only on several questions did [the Child] need to take time to think or reflect on an answer"; (3) the answers of the Child "did not appear to be rehearsed or memorized" and "were consistent over the 57 minute interview only with several exceptions that the [c]ourt noted"; (4) the inconsistencies in the Child's answers did "not constitute a substantial inconsistency, and the [c]ourt finds that they do not materially detract from the [C]hild's credibility"; (5) "[a]lthough [the interviewer] may have on a number of occasions responded to [the Child]'s answers by restating the answer, which ... could have the psychological effect of reinforcing the correctness of the answer in the [C]hild's mind, the [c]ourt finds that ... [the interviewer] did not suggest what the answers should be even though [the interviewer] may have restated the answer given by the [C]hild, and [the interviewer] did not suggest that the answer was incorrect or incomplete"; (6) "[a]lthough [the interviewer] may have used several leading questions they were not sufficient to suggest to the [C]hild what the answer should be"; (7) the leading questions used by the interviewer were "on the borderline of being [ ] suggestive answer[s], but the [c]ourt finds that the [C]hild was independent in [giving] answers and gave answers which were not reflective of having been coached nor giving answers which were suggested to her"; and (8) "even though on previous occasions [the Child] had been told derogatory things" about Stepfather and Mother by Father and Stepmother, "[these] statements did not materially influence the [C]hild to make the statements and the answers that [the Child] gave."
¶ 15 The trial court also found that the Child's out-of-court statements in Exhibit # 20 were "offered as evidence of a material fact," thereby satisfying the requirement of rule 803(24)(A). Utah R. Evid. 803(24)(A). Because the Child's statements in Exhibit # 20 were the basis for the petition for the protective order, we agree with the trial court's determination that they were "offered as evidence of a material fact" and that the requirement of rule 803(24)(A) was satisfied in this case. Id.
¶ 16 In addition, the trial court determined that the Child's out-of-court statements in Exhibit # 20 satisfied the requirements of rule 803(24)(B) and rule 803(24)(C). "While we recognize the trial court's discretion in making such a determination," Nelson, 777 P.2d at 482, we conclude that the trial record and the trial court's findings are inadequate to support the trial court's determination that the Child's hearsay statements contained in Exhibit # 20 satisfied the requirements of rule 803(24)(B) and rule 803(24)(C).

A. Rule 803(24)(B)
¶ 17 In support of its conclusion under rule 803(24)(B) of the Utah Rules of Evidence, the trial court entered the following "findings":
The [c]ourt also finds that the statement on the tape is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts. It appears that the [C]hild is one of the witnesses to the event,[5] although there were other witnesses.[6] *976 There is no reason why this child would be any less credible than others and the [c]ourt finds that [the Child's] statement is more probative on this point than any other evidence that could be obtained at the present time.
¶ 18 Neither these so-called "findings," nor the trial record support the conclusion the trial court reached under rule 803(24)(B) because they both fail to show whether the trial court considered if the Child's in-court testimony would have been more probative than the Child's out-of-court statements contained in Exhibit # 20. Although rule 803(24) does not require a showing of unavailability for a hearsay statement to be admissible under its requirements, rule 803(24)(B) does require a showing that the hearsay statement be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." Utah R. Evid. 803(24)(B) (emphasis added). Because we are not presented with any information from the parties' briefs, the trial record, or the trial court's findings about why the Child was not called to testify, "[w]e do not agree that the out-of-court statements offered at trial were more probative on the point for which they were offered than the [in-court] testimony of [the Child]." State v. Nelson, 777 P.2d 479, 482 (Utah 1989). Therefore, we conclude that the trial court erred by determining that the requirement of rule 803(24)(B) was satisfied in this case.

B. Rule 803(24)(C)
¶ 19 In support of its conclusion under rule 803(24)(C) of the Utah Rules of Evidence, the trial court entered the following "findings":
[T]he [c]ourt also finds that the purpose of the [Utah Rules of Evidence] and the interest of justice will best be served by admission of the statement into evidence. The [c]ourt finds that the statement of the [C]hild is perhaps the best evidence that can be obtained as to whether or not these events did or did not occur and, therefore, the [c]ourt finds that the interests of justice would be served by receiving this into evidence.
¶ 20 These conclusory "findings" do not support the trial court's conclusion under rule 803(24)(C) because they do not show how "the general purpose of [the Utah Rules of Evidence] and the interests of justice will best be served by admission of the statement[s] into evidence." Utah R. Evid. 803(24)(C). The general purpose of the Utah Rules of Evidence provides that they "shall be construed to secure ... promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Utah R. Evid. 102. Neither the trial court's findings nor the trial record show how the trial court's decision to admit the Child's out-of-court statements in Exhibit # 20, in lieu of the Child's live testimony, best serves the general purpose of ensuring that "the truth [is] ascertained and [the] proceedings [are] justly determined." Id. Again, because we are not presented with any information from the parties' briefs, the trial record, or the trial court's findings about why the Child was not called to testify, we do not agree that "the general purpose of [the Utah Rules of Evidence] and the interests of justice [would] best be served" by admitting the Child's out-of-court statements in Exhibit # 20 into evidence. Utah R. Evid. 803(24)(C). Therefore, we conclude that the trial court erred by determining that the requirement of rule 803(24)(C) was satisfied in this case.
¶ 21 Because the trial court's findings and the trial record do not support the trial court's determination that the requirements of rule 803(24)(B) and rule 803(24)(C) were satisfied in this case, we conclude that the trial court erred by admitting the Child's out-of-court statements contained in Exhibit # 20 under rule 803(24).

*977 II. Sufficiency of the Evidence
¶ 22 Stepfather argues that there was insufficient evidence to support the trial court's issuance of the protective order against him pursuant to Utah Code Ann. § 30-6-2(1) (1998).[7] "[W]e review the trial court's findings of fact for clear error, reversing only where the finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." ProMax Dev. Corp. v. Mattson, 943 P.2d 247, 255 (Utah Ct.App. 1997).
¶ 23 In the relevant portion of its written ruling on the protective order, the trial court concluded that there was "a substantial likelihood of immediate danger of abuse or domestic violence" to the Child and, as a result, issued the protective order pursuant to section 30-6-2(1). In support of this conclusion, the trial court entered written findings in its ruling, most of which rely exclusively on the Child's hearsay statements contained in Exhibit # 20.[8] Because we conclude that the trial court erred by admitting the Child's out-of-court statements contained in Exhibit # 20 into evidence, we do not consider the trial court's findings based upon Exhibit # 20 in our review of its decision to issue the protective order. As a result, we are left with the remainder of the trial court's findings from the relevant portion of its ruling as the basis for its decision to issue the protective order.
¶ 24 Notwithstanding the fact that Father's counsel conceded at trial that the March 1997 incident was a "minor allegation that [Father] made" and that "it's not [Father]'s allegations, it's [the Child]'s disclosure that brings us all here," the remainder of the trial court's written findings from the relevant portion of its ruling rely upon the March 1997 incident. Specifically, the trial court found (1) that Father's credibility in his testimony regarding the March 1997 incident was not "compromised," and (2) that the March 1997 incident was one of the bases for its conclusion that there was "a substantial likelihood of immediate danger of abuse or domestic violence" to the Child.
¶ 25 The March 1997 incident, presumably observable by anyone in the vicinity, was not reported in the petition for the protective order for over four years. Moreover, during this period of time, Father continued to exercise his reasonable rights of visitation with the Child, which included returning the Child after visitation to reside with Mother and Stepfather in the home where the March 1997 incident occurred. We conclude that the March 1997 incident, even if proven to have occurred, was too remote in time to Father's filing of the petition for the protective order to be a sufficient basis for the trial court's conclusion under section 30-6-2(1).
¶ 26 For the foregoing reasons, we conclude that the trial court's findings supporting its determination that there was "a substantial likelihood of immediate danger of abuse or domestic violence" to the Child are "against the clear weight of the evidence" and, therefore, are clearly erroneous. ProMax Dev. Corp., 943 P.2d at 255. As a result, we conclude that there was insufficient evidence to support the trial court's issuance of the protective order against Stepfather pursuant to section 30-6-2(1).

CONCLUSION
¶ 27 We conclude that the trial court erred by admitting the Child's hearsay statements contained in Exhibit # 20 into evidence. We also conclude that there was insufficient evidence to support the trial court's issuance of the protective order against Stepfather pursuant to Utah Code Ann. § 30-6-2(1) (1998). Therefore, we reverse the trial court's issuance of the protective order.
*978 ¶ 28 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and GREGORY K. ORME, Judge.
NOTES
[1] The Child was interviewed by DCFS on three separate occasions. Although the first interview was not videotaped, both the second and third interviews were videotaped. The guardian ad litem only offered the videotape of the third interview (Exhibit # 20) into evidence at trial. The videotape of the second interview was never offered into evidence at trial by either of the parties or the guardian ad litem. Although references were made to the videotape of the second interview during the trial, Stepfather never formally requested, nor was he provided with, a copy of that videotape or a transcript of the interview.
[2] In his brief, Stepfather presents twelve separate issues in the "Statement Of Issues Presented For Review" section, yet only has headings for six separate issues in the "Argument" section.
[3] Stepfather argues that the trial court erred by failing to dismiss the petition for the protective order because the petitioner was not "sworn upon his oath" to the truth of the allegations in the petition at the time petitioner signed it before a notary public. Because the first two issues are dispositive of this case, we decline to address this issue.

Stepfather also makes constitutional claims that his right of due process and his right of confrontation were violated by the admission of the Child's hearsay statements contained in Exhibit # 20. "[I]t is fundamental that constitutional issues should be avoided if the case can be properly decided on non-constitutional grounds." Bailey v. Bayles, 2002 UT 58, ¶ 26, 52 P.3d 1158 (quotations and citation omitted). Because we decide this case on the basis of the first two issues, we do not address Stepfather's constitutional claims.
[4] Rule 803(24) also contains a notice component, which requires the proponent of the hearsay statement to provide notice to the adverse party "sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant." Utah R. Evid. 803(24). Because we resolve the rule 803(24) admissibility issue on other grounds, we do not address this notice requirement.
[5] The trial court's reference to "the event" refers to the alleged events involving Stepfather that are the substance of the Child's out-of-court statements contained in Exhibit # 20.
[6] The trial court's reference to "other witnesses" refers to the other people who the Child indicated, during the interview contained in Exhibit # 20, were present when the alleged events involving Stepfather occurred. Mother, Stepfather, and C.B. (Stepfather's child) were the only three of these "other witnesses" who testified at trial. All three were called to testify by Stepfather and gave testimony in support of Stepfather.
[7] Section 30-6-2(1) provides:

Any cohabitant or any child residing with a cohabitant who has been subjected to abuse or domestic violence, or to whom there is a substantial likelihood of immediate danger of abuse or domestic violence, may seek an ex parte protective order or a protective order in accordance with this chapter, whether or not that person has left the residence or the premises in an effort to avoid further abuse.
Utah Code Ann. § 30-6-2(1) (1998).
[8] In this portion of its ruling, the trial court entered seven separate written findings. Five of these, and part of one other, either rely upon or make reference to the Child's statements contained in Exhibit # 20.