2005 UT App 489

**Jon and Elizabeth TRIESAULT, Raymon and Stephanie Bori, individuals; Imagination Theaters, Inc., a corporation; and Imagination Theaters Holdings, LLC, a limited liability company, Plaintiffs and Appellants,**

v.

**The GREATER SALT LAKE BUSINESS DISTRICT, a Utah corporation dba Deseret Certified Development Company, Defendant and Appellee.**

No. 20040811–CA.

Court of Appeals of Utah.

Nov. 10, 2005.

Allen K. Young, Young Kester & Petro, Provo, and Jonah Orlofsky, Chicago, Illinois, for Appellants.

Lynn S. Davies, Michael P. Zaccheo, and Nathan S. Morris, Richards Brandt Miller & Nelson, Salt Lake City, and Paul H. Van-Dyke, Elggren & Van Dyke, Sandy, for Appellee.

Before BILLINGS, P.J., DAVIS and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 Plaintiffs [1] appeal from the trial court's grant of Defendant Greater Salt Lake Business District, dba Deseret Certified Development Company's (Deseret) motion for summary judgment. Plaintiffs argue that the trial court erred by ruling that the Plaintiffs failed to raise triable issues of fact on their breach of fiduciary duty and intentional interference with prospective economic relations claims. We affirm.

## BACKGROUND [2]

¶ 2 In 1991, Jon and Elizabeth Triesault moved to Utah seeking a lifestyle change. The Triesaults joined Raymon and Stephanie

---

1. The named plaintiffs in this action are Jon and Elizabeth Triesault and Raymon and Stephanie Bori as individuals; Imagination Theaters Inc., a corporation; and Imagination Theaters Holdings, L.L.C. For ease of reference, we refer to the plaintiffs collectively as either Triesault or Plaintiffs.

2. Because summary judgment was entered against Plaintiffs, we state the facts in a light most favorable to them. *See Harline v. Barker,* 912 P.2d 433, 435 (Utah 1996).

Bori to pursue opening a movie theater in Spanish Fork, Utah (the Spanish Fork theater). They later formed two corporations, Imagination Theaters, Inc. and Imagination Theaters Holding, L.L.C. Mr. Triesault had a background in the movie and television industry, but had no prior experience in opening or owning a movie theater.

¶ 3 Triesault sought financing for the Spanish Fork theater with various banks. Triesault was unable to obtain conventional financing, so he hired Deseret, a certified development company (CDC), to help him through the process of obtaining a Small Business Administration (SBA) backed loan. Deseret was the only CDC the SBA authorized to operate in the area at that time. Triesault first met Mr. Vanchiere, a vice-president of Deseret, at Zions Bank in Provo, Utah. Triesault presented his business plan to bank officials for the purpose of obtaining advice and ultimately, financing for the theater. Immediately after the meeting, Vanchiere introduced himself to Triesault and said, "I don't think you're going to get anywhere with the bank. But I like your idea and I can help you get a[n] SBA loan. And I can also help you get a bank that would also partially fund your project." [3]

¶ 4 Vanchiere first worked with Triesault on the business plan for the Spanish Fork theater. Specifically, Triesault and Vanchiere discussed that 10,000 people per movie screen was a generally accepted number used to determine the economic viability of rural movie theaters. The planned Spanish Fork theater would have eight screens, and the target market was from southern Provo to south of Nephi, Utah, an area that included approximately 80,000 people.[4]

¶ 5 Vanchiere provided Triesault with all of the necessary SBA application documents and provided assistance in filling them out. Those documents included the loan applications, personal financial statements, business plans, and individual resumes. After completing the necessary paperwork, Vanchiere and Deseret reviewed the application to decide if it would likely meet the SBA's criteria. Once Deseret decided the application would likely be acceptable, it submitted the application to the SBA. From this point onward, all communications with the SBA were handled for Triesault by Deseret.

¶ 6 After obtaining the necessary preliminary approval from the SBA, Vanchiere helped Triesault with the Spanish Fork theater's construction. At one point during construction, Triesault exceeded the theater's budget and Vanchiere advised Triesault on how to cut costs. Vanchiere continued to monitor the costs of the theater's construction, and he repeatedly discussed the construction project and costs with the builder himself. The Spanish Fork theater opened on November 26, 1997, as a "second-run" theater.

¶ 7 On or about May 27, 1998, the SBA backed financing closed. At closing, Vanchiere presented Triesault with a stack of documents and said that because Triesault trusted him, he did not need to read any of the documents. Triesault agreed and signed the documents without reviewing them.

¶ 8 Subsequent to the loan closing, Vanchiere visited the Spanish Fork theater an average of two weekends per month. During his visits, Vanchiere and Triesault discussed various aspects of the Spanish Fork theater's business, including what should be served at the concessions stand, what movies should be shown, and whether the theater should show first-run rather than second-run movies.

3. Triesault was to apply under the Section 504 loan program, which provides long-term permanent financing for small businesses. The financing typically involves a package with three components: the borrower contributes 10%, a private bank loans 50%, and a CDC loans the remaining 40%. The CDC's loan is funded by debentures that are backed by a 100% SBA guarantee. There is a complex application process involved in securing the SBA's approval for a Section 504 loan. After submitting the application, the SBA grants preliminary approval. After preliminary approval, the applicant must meet all of the conditions for final approval. After final approval, the applicant must continue to meet all of the SBA's requirements on an ongoing basis.

4. Deseret contends that "the evidence does not reflect that Vanchiere and ... Plaintiffs ever reached [the] conclusion [that the target market was from southern Provo to south of Nephi] together, or that Triesault's opinion about the geographical market was accurate."

Triesault provided Vanchiere with confidential information regarding how the Spanish Fork theater's business was doing. Although Vanchiere was involved in numerous meetings, he made no specific decisions with regard to equipment selection, architectural plans, or construction, and made no specific representation that he had expertise in the movie theater business.

¶ 9 After nine months of operating as a second-run movie theater without any profits, Triesault decided to show only first-run films. By the end of 1999, the Spanish Fork theater was consistently turning a profit. Around that same time, Deseret was working on a possible Section 504 loan package for a group of investors that sought to open a theater in Payson (the Payson theater), which is about ten miles away and within the target market area of the Spanish Fork theater. The Payson theater's appraisal report, which was part of its business plan, noted that twelve other movie screens were then located in southern Utah County, including the Spanish Fork theater and three older single-screen theaters. The appraisal concluded that with the addition of the Payson theater, there would be fifteen first-run screens in southern Utah County, although "[a]ccording to various sources, there [was] one other movie theater development in the pipeline for Utah County. This [was] located in south Provo [the Cinemark 16 Provo Town Centre Theater]." Moreover, the appraisal provided:

> At first glance it appears that there may not be sufficient demand or population for the proposed [Payson] theater; however, it should be noticed that a new project which is superior to existing supply frequently takes away market share from the existing supply—and in effect, makes the older projects no longer feasible, rather than the newer project. In the case of the [Payson theater] subject property, it will be the only theater in this market with stadium seating and all THX sound system. Given this fact, it is reasonable that the [Payson theater] subject property will be able to attract more than its "fair share."

¶ 10 The Payson theater opened in 2000. After its opening, the Spanish Fork theater never again showed a profit. The financial figures show that for the twelve months prior to the Payson theater's opening, the Spanish Fork theater's revenues were about two million dollars, but for the twelve months after the opening, revenues fell to 1.4 million dollars. By 2002, Triesault filed for bankruptcy, and as a result, Triesault lost his 1.5 million dollar personal investment.

¶ 11 Deseret's theater expert, Tony Rudman, opined that a variety of market factors contributed to the Spanish Fork theater's failure, particularly the opening of the Provo Cinemark 16 Theaters, the project earlier said to be in the pipeline. Moreover, Rudman testified that there was no way of knowing whether the establishment of the Payson theater contributed to the failure of the Spanish Fork theater. Triesault did not submit any expert testimony tending to show that the opening of the Payson theater caused the decline in revenue of the Spanish Fork theater.

¶ 12 Triesault filed suit against Deseret alleging breach of fiduciary duty, tortious interference with prospective economic relations, breach of the duty of good faith and fair dealing, and intentional infliction of emotional distress. Ultimately, the lower court granted Deseret's motion for summary judgment and dismissed all of Triesault's claims. Triesault now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 13 Triesault argues that the trial court erred by granting Deseret's motion for summary judgment and ruling that Triesault failed to raise a triable issue of material fact on his breach of fiduciary duty and intentional interference with prospective economic relations claims. "In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Harline v. Barker*, 912 P.2d 433, 435 (Utah 1996) (quotations and citations omitted). "Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Id.* at 438 (quotations and citations omitted). Whether a party is entitled to summary judgment is a

## ANALYSIS[5]

### I. Causation

¶ 14 The trial court concluded there was no record evidence from which a reasonable juror could conclude that the opening of the Payson theater caused Triesault's loss. We agree. Utah courts have held that summary judgment on the issue of causation is appropriate, "[n]otwithstanding the general rule" that causation is a jury issue, when the plaintiff cannot "show that a jury could conclude, without speculation," that the injury would not have occurred but for the defendant's breach. *Thurston v. Workers Comp. Fund*, 2003 UT App 438, ¶¶ 12–16, 83 P.3d 391; *see also Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996) ("[P]roximate cause issues can be decided as a matter of law ... when the proximate cause of an injury is left to speculation so that the claim fails as a matter of law."). Moreover, this court has affirmed summary judgment when the trial court found "the jurors would have had to engage in rank speculation to reach a verdict" regarding causation. *Clark v. Farmers Ins. Exch.*, 893 P.2d 598, 600–01 (Utah Ct. App.1995) (quotations omitted).

¶ 15 Triesault argues that Deseret's assistance to the Payson theater caused his loss. However, this claim is based simply on the timing of the opening of the Payson theater and the coincidental drop in revenues at the Spanish Fork theater. As a result, Triesault's claim would require a jury to engage in "rank speculation to reach a verdict" on causation. *Id.* at 600.

¶ 16 Deseret submitted expert testimony that the Spanish Fork theater could have failed due to any number of factors—including movie selection and the opening of the Cinemark 16 Provo Town Centre Theater. Triesault did not present any evidence tending to support his claim that the opening of the Payson theater caused the decline in revenue of the Spanish Fork theater. *See Schreiter v. Wasatch Manor, Inc.*, 871 P.2d 570, 574 (Utah Ct.App.1994) (stating expert testimony is required to establish causation unless "the propriety of the defendant's action is within the common knowledge and experience of the layman" (quotations and citation omitted)). Whether the Spanish Fork theater declined due to the Payson theater's existence is not something "within the common knowledge and experience of the layman." *Id.* Thus, Triesault has not convinced this court that there is a triable issue of material fact as to whether Deseret's actions caused Triesault's injuries, and we therefore affirm the trial court's grant of summary judgment on Triesault's breach of fiduciary duty claim.

### II. Intentional Interference with Prospective Economic Relations

¶ 17 Triesault next contends that the trial court erred by granting summary judgment because there was a triable issue of material fact as to whether Deseret intentionally interfered with Triesault's prospective economic relations. To recover for intentional interference with prospective economic relations, Triesault must show "(1) that [Deseret] intentionally interfered with [Triesault's] existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to [Triesault]." *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982). Triesault argues that Deseret's promotion of the Payson theater interfered with Triesault's existing and potential economic relations with its movie patrons. Triesault further alleges this was intentional because the business plan for the Payson theater intended to succeed by luring away Triesault's customers.

¶ 18 First, Triesault argues that Deseret engaged in improper means by interfering with Triesault's economic relations with the Spanish Fork theater customers because Deseret engaged in "deceit or misrepresentation." *Id.* at 308 (quotations and citation omitted). Triesault contends that Deseret

---

5. We do not reach the issue of whether Deseret owed Triesault a fiduciary duty as we affirm on the basis of no causation.

deceived the SBA into providing financing to the Payson theater that would allegedly cause the destruction of the Spanish Fork theater. Triesault argues that the Payson theater's business plan appraisal report depended upon taking significant numbers of Triesault's customers and making the Spanish Fork theater "no longer feasible." Moreover, because the "SBA's program is designed to foster successful businesses," Triesault argues that Deseret used improper means by seeking SBA approval when it had an alleged conflict of interest. However, there was simply no evidence before the trial court that Deseret falsified or concealed information from the SBA. Thus, the trial court properly concluded that the appraisal was insufficient to create an issue of material fact that could justify a finding of deceit or misrepresentation.

¶ 19 Triesault next argues that Deseret engaged in improper means because it "violat[ed] an established standard of a trade or profession." *Id.* (quotations and citation omitted). Triesault cites to the Code of Federal Regulations which states that a CDC may not "[h]ave a real or apparent conflict of interest with a small business with which it is dealing (including any of its Associates or an Associate's Close Relatives) or SBA." 13 C.F.R. § 120.140(b) (2005). However, the Code does not define what a conflict is, and the broad reading argued by Triesault is unrealistic under the process provided by the SBA for a Section 504 loan. Thus, we agree with the trial court's determination that Deseret did not engage in improper means as a matter of law.

## CONCLUSION

¶ 20 Triesault has failed to convince this court that the trial court erred by granting Deseret's motion for summary judgment. We determine, as a matter of law, that there are no triable issues of material fact and that the trial court did not err in so ruling. Accordingly, we affirm.

¶ 21 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.