2008 UT App 370

**Doug SCOTT and Estate of Ruth Lyndevall Scott, Plaintiffs and Appellants,**

v.

**HK CONTRACTORS and Utah Barricade Company, Inc., Defendants and Appellee.**

No. 20070427–CA.

Court of Appeals of Utah.

Oct. 23, 2008.

Justin C. Bond, Layton, for Appellants.

Terry M. Plant and H. Justin Hitt, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and McHUGH.

## OPINION

BILLINGS, Judge:

¶ 1 Ruth Lyndevall Scott was driving through a construction site in Salt Lake County when her vehicle fell into an open trench. She sustained serious injuries which eventually led to her death. Her Estate (the Estate) sued the construction company, HK Contractors (Contractor), alleging that Contractor negligently failed to provide adequate safety measures at the construction site.[1] The trial court granted summary judgment in favor of Contractor after determining that the Estate had failed to prove that Contractor's negligence caused Mrs. Scott's injury. We reverse and remand.

## BACKGROUND

¶ 2 Contractor was working on a road construction project in Salt Lake County, excavating the road and digging trenches for the placement of various pipes and sewer lines. The project required that traffic detours control the traffic around the trenches. As Mrs. Scott drove through the project, she drove into an open trench. She was taken to the emergency room. Approximately two hours later, her husband arrived and had several short conversations with her. During the first of these conversations, Mrs. Scott told her husband that she had become confused about which way to travel through the site. Shortly thereafter, Mrs. Scott suffered respiratory failure and fell into a coma. She later died.

¶ 3 The Estate brought this action, alleging that Contractor breached its duty of care to the public. Specifically, the Estate argued that Contractor was negligent in guiding traffic through the construction site. In response, Contractor filed a motion for summary judgment, arguing that its barricades were properly placed by a licensed engineer and in accordance with the Manual on Uniform Traffic Control Devices (MUTCD), which sets the standard for proper traffic control devices.

¶ 4 The trial court granted summary judgment in favor of Contractor, ruling that the Estate had not submitted sufficient evidence that Contractor's negligence caused Mrs. Scott's accident. The trial court, in granting summary judgment, concluded that alternative factors may have caused or contributed to the accident; for example, sun reflecting in the windshield or Mrs. Scott taking her eyes off of the road to adjust the radio. The trial court also ruled that Mrs. Scott's statement in the hospital that she had become "confused" was inadmissible hearsay.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 We first consider whether the trial court erred by ruling that Mrs. Scott's statement to her husband was inadmissible hearsay. In reviewing a hearsay issue, "[w]e review the legal questions to make the determination of admissibility for correctness. We review the questions of fact for clear

---

1. The Estate initially included Utah Barricade Company, Inc. as a defendant, but they settled. Utah Barricade is not a party to this appeal.

error. Finally, we review the [trial] court's ruling on admissibility for abuse of discretion." *State v. Workman*, 2005 UT 66, ¶ 10, 122 P.3d 639 (citations omitted); 122 P.3d 639, *see also N.D. v. A.B.*, 2003 UT App 215, ¶ 11, 73 P.3d 971 ("Because an admissibility decision under [the residual hearsay exception] requires the application of facts to the legal requirements of the rule, ... the trial court has some discretion in making this determination.").

█ ¶ 6 We also consider whether the trial court erred in granting summary judgment in favor of Contractor. Summary judgment is proper when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). "Because summary judgment is granted as a matter of law, we review the trial court's ruling for correctness." *White v. Deseelhorst*, 879 P.2d 1371, 1374 (Utah 1994). "In reviewing the trial court's ruling, we accept the facts and inferences in the light most favorable to the losing party." *Winegar v. Froerer Corp.*, 813 P.2d 104, 107 (Utah 1991). In making our assessment, we are mindful that "summary judgment is generally inappropriate to resolve negligence claims and should be employed only in the most clear-cut case." *Deseelhorst*, 879 P.2d at 1374 (citations and internal quotation marks omitted). Further, "[i]n the case of a summary judgment ... the party against whom the judgment has been granted is entitled to have all the facts presented and all the inferences fairly arising therefrom considered in a light most favorable to him." *Young v. Texas Co.*, 8 Utah 2d 206, 331 P.2d 1099, 1100 (1958).

## ANALYSIS

### I. Hearsay

¶ 7 The trial court determined that Mrs. Scott's statements to her husband that she was "confused" were inadmissible hearsay. According to Mr. Scott's affidavit, he arrived at the hospital approximately two hours after the accident. He stated, "I had several short conversations with Ruth Scott. During the first conversation I asked her what happened regarding the accident. Ruth Scott stated to me that she was confused about which way to travel through the construction area. Shortly after this Ruth Scott was taken to X-ray." The Estate argues that this statement is admissible under three exceptions to the hearsay rule: the present sense impression exception, *see* Utah R. Evid. 803(1); the residual exception, *see id.* R. 807; and the excited utterance exception, *see id.* R. 803(2).

### A. The Present Sense Impression Exception

█ ¶ 8 The present sense impression exception excludes from the general hearsay rule "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." *Id.* R. 803(1). Because the exception requires that the statement be contemporaneous with the event, *see State v. Smith*, 909 P.2d 236, 240 (Utah 1995) (stating that the excited utterance exception "need not be strictly contemporaneous with the startling event to be spontaneous, as is the case with the 'present sense impression' exception"), we cannot say that Mrs. Scott's statement to her husband two hours after the accident falls under the present sense impression exception.

### B. The Residual Exception

█ ¶ 9 Rule 807 of the Utah Rules Evidence states:

> A statement not specifically covered by [r]ule 803 or [r]ule 804 but having equivalent circumstantial guarantees of trustworthiness is not excluded by the hearsay rule if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interests of justice will be best served by admission of the statement into the evidence.

Utah R. Evid. 807. "The residual hearsay exception is to be used rarely and construed strictly," *Workman*, 2005 UT 66, ¶ 12, 122 P.3d 639, and allowed only where " '[the

statement's] admission is justified by the inherent reliability of the statement and the need for its admission,'" *State v. Webster,* 2001 UT App 238, ¶ 26, 32 P.3d 976 (quoting *State v. Nelson,* 777 P.2d 479, 482 (Utah 1989)).

¶ 10 Here, the trial court determined that Mrs. Scott's statement was inadmissible under the residual exception because it was not inherently reliable. In *State v. Webster,* 2001 UT App 238, 32 P.3d 976, we identified several factors that should be considered when evaluating a statement's admissibility under the residual exception, including:

(1) the probable motivation of the declarant in making the statement; (2) the circumstances under which it was made; and (3) the knowledge and qualifications of the declarant.... [A]dditional factors that may be considered ... include: (1) the character of the declarant for truthfulness and honesty and the availability of evidence on the issue; (2) whether the [statement] was given voluntarily, under oath, subject to cross examination and a penalty for perjury; (3) the extent to which the [declarant's statement] reflects his personal knowledge; (4) whether the [declarant] ever recanted his [statement]; and (5) whether the declarant's statement was insufficiently corroborated.

*Id.* ¶ 27.

¶ 11 On appeal, Contractor challenges Mrs. Scott's probable motivation in making the statement, the circumstances under which it was made, the lack of evidence concerning her character for truthfulness and honesty, the lack of evidence concerning her mental state when she made the statement, and the lack of evidence to corroborate the statement. Furthermore, Contractor emphasizes that the statement was not given under oath and Mrs. Scott was not subject to cross-examination. We agree with the trial court that this statement does not have the characteristics of rule 807 evidence and thus was properly excluded.

### C. The Excited Utterance Exception

¶ 12 The excited utterance exception excludes from the general hearsay rule "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Utah R. Evid. 803(2). "[A] statement constitutes an excited utterance only when (1) a startling event or condition has occurred; (2) the statement was made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement relates to the startling event or condition." *State v. Mickelson,* 848 P.2d 677, 683 (Utah Ct.App. 1992). Because the first and third factors are clearly established in this case, we consider only the second factor: Was Mrs. Scott's statement to her husband made while she was under the stress of excitement caused by the accident?

¶ 13 "The crucial question in all cases is whether the statement was made while the declarant was still under the influence of the event to the extent that [her] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment." *State v. Thomas,* 777 P.2d 445, 449 (Utah 1989). Said another way, the "declaration must be a spontaneous reaction to the event or condition, not the result of reflective thought." *State v. Smith,* 909 P.2d 236, 240 (Utah 1995). In making our assessment, we include "the likely effects of the declarant's age, the declarant's physical and mental condition, the circumstances and nature of the startling event, the subject matter of the statement, and the time lapse between the event and the utterance." *Id.*

¶ 14 The trial court, though it offered no explanation, concluded that Mrs. Scott's statement was not an excited utterance. We consider each of the factors: Mrs. Scott was seventy-seven years old; she was clearly in poor physical condition at the time she made the statement, because it was shortly before she fell into a coma; the event was presumably extremely startling and disturbing; and the statement was made in response to her husband's inquiry, "What happened?" Each of these factors weighs in favor of allowing the statement. On the other hand, the time lapse of two hours cuts against admission, because it could have been long enough after

the accident to give her some time to reflect and recover from the emotional trauma. On the record before us, we simply cannot determine if Mrs. Scott was still under the stress of excitement from the accident. On remand, we direct the trial court to probe the factual circumstances from the time of the accident to the giving of the statement and, in considering these factual events, to determine if she was under the stress of excitement from the accident and thus whether the statement should be admitted under this exception at trial.[2]

## II.  Causation

■ ¶ 15 The trial court determined that the Estate failed to establish a causal causation between Contractor's allegedly negligent direction of traffic at the construction site and Mrs. Scott's injury. To illustrate its position that the theory was merely conjecture, the trial court volunteered alternative theories, including "that the sun shone in her eyes or that she got dust . . . in her eyes" or that "she's taking some kind of medication that maybe confuses her. Or she's listening to the radio or whatever." In its findings of fact, the trial court stated that even if Mrs. Scott's statement to her husband was admissible,

> [it] fail[ed] to eliminate other facts or issues that may have diverted [her] attention or caused her to be confused. The fact that she was confused about knowing which way to go through the construction area does not establish any direct relationship to any potential misconduct or negligence on the part of [D]efendant.

¶ 16 However, in requiring the Estate to prove causation if it is to survive summary judgment, the trial court holds the Estate to too high a standard. In trying to survive a motion for summary judgment, plaintiffs are not required to prove indisputably that no other cause contributed to the accident. In *Alder v. Bayer Corp.*, 2002 UT 115, 61 P.3d 1068, the Utah Supreme Court embraced the Second Circuit's reasoning in *Zuchowicz v. United States*, 140 F.3d 381 (2d Cir.1998):

> If (a) a negligent act was deemed wrongful *because* that act *increased the chances that a particular type of accident would occur, and (b) a mishap of that very sort did happen*, this was enough to support a finding by the trier of fact that the negligent behavior caused the harm. . . . [W]here such a strong causal link exists, it is up to the negligent party to bring in evidence denying *but for cause* and suggesting that in the actual case the wrongful conduct had not been a substantial factor.

*Alder*, 2002 UT 115, ¶ 87, 61 P.3d 1068 (second emphasis added) (quoting *Zuchowicz*, 140 F.3d 381, 390–91). In this case, then, it is not the Estate's responsibility to eliminate possibilities such as blinding sun or dust in Mrs. Scott's eyes. Rather, the Estate ought to have the opportunity to present its theory to the jury if it is supported by facts in the record and allow the jury to draw its own conclusions.

■ ¶ 17 We acknowledge, as Contractor argues, that "[a] finding of causation cannot be predicated on mere speculation or conjecture." *Lindsay v. Gibbons & Reed*, 27 Utah 2d 419, 497 P.2d 28, 31 (1972). However, in this case, the Estate is not putting forth "mere speculation or conjecture." The Estate hopes that the jury will *infer*, rather than *speculate*, that poor safety measures around the construction site caused the accident. To build this theory of the case, the Estate offered the testimony of three individuals who traveled the road and observed that Contractor's placement of barricades was confusing and misleading. The Estate questioned Larry Griffith, who drove through the site daily. Griffith testified that he had trouble "wondering which way to go" because there were no flashing arrows instructing drivers to change lanes, cones were turned over, some barricades were turned over, the arrows were sometimes straight and sometimes "skewampus," dump trucks were in the way, and generally the site was very "confusing." The Estate submitted the affidavit of James Boulton, who stated that he traveled through the location of the accident two or three times a day. He stated that barricades

---

**2.** Even if these statements are excluded, we still conclude the Estate submitted sufficient facts on the issue of causation to survive summary judgment. *See infra* Part II, Causation.

were knocked over, there were no flagmen, and that in his opinion the barricades were "too far apart." The Estate also submitted the affidavit of George Peters who drove through the construction site regularly. He stated that the barricades were "so far apart that a car could easily pass between them and not know they [the driver] were going the wrong direction" and that the "hole across the roadway [was] completely exposed without anyone giving directions." The Estate also may be able to show that Contractor's safety measures were inadequate.

¶ 18 Finally, Mrs. Scott's statement to her husband that the barricades were confusing and caused her to travel in the wrong direction, if admissible, supports an inference that Contractor's negligence caused her injuries. The ability to lead the jury to a reasonable inference is protected by our case law, and is clearly explained in *Lindsay v. Gibbons & Reed*, 27 Utah 2d 419, 497 P.2d 28, 31 (1972):

> [T]he matter must be withdrawn from the jury's consideration, unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the defendant. *Jurors may not speculate as to possibilities; they may, however, make justifiable inferences from circumstantial evidence to find negligence or proximate cause.* In such instances, circumstantial evidence is sufficient to establish a prima facie case of negligence, if men of reasonable minds may conclude that there is a greater probability that the conduct relied upon was the proximate cause of the injury than there is that it was not.

*Id.* (emphasis added) (citations omitted).

¶ 19 We acknowledge that Utah's appellate courts have on occasion upheld a trial court's grant of summary judgment on the issue of causation. However, we find these cases factually distinguishable. In *Triesault v. Greater Salt Lake Business District*, 2005 UT App 489, 126 P.3d 781, plaintiff Triesault owned a movie theater in Spanish Fork, Utah. *See id.* ¶ 2. He hired a developer to help secure the financing to open the theater but sued the developer when it subsequently helped a competing movie theater open in Payson, Utah. *See id.* ¶¶ 2, 12. After the Payson theater opened, the Spanish Fork theater stopped turning a profit. *See id.* ¶ 10. Triesault sued for breach of fiduciary duty and intentional interference with prospective economic relations. *See id.* ¶ 2.

¶ 20 Triesault claimed the timing proved the loss was related to the opening of the Payson theater. *See id.* ¶ 15. However, the developer submitted to the court factual evidence that other factors could have caused the loss, including poor selection of movies and the opening of the Provo Cinemark theaters, also located in the same general geographic area. *See id.* ¶ 16. This court determined that Triesault had not shown causation as his theory was based on pure speculation. *See id. Triesault* is distinguishable from the case before us, because Triesault submitted no facts to the summary judgment court supporting his theory of causation but offered only the coincidence of timing to support his claim. In the instant case, the Estate submitted the testimony of three witnesses detailing specific facts observed by drivers following the same route as Mrs. Scott, including overturned barricades and cones, lack of flagmen, the exposed hole, dump trucks in the road, arrows that did not necessarily point the right direction, and barricades so far apart a car could pass through them.

¶ 21 In *Speros v. Fricke*, 2004 UT 69, 98 P.3d 28, Fricke was driving her vehicle when the passenger unexpectedly grabbed and turned the steering wheel. *Id.*, 2004 UT 69, ¶ 1, 98 P.3d 28. Fricke's vehicle veered into opposing traffic, injuring another driver, Speros. *See id.* Speros's insurer, West American, sued Fricke's insurer, Nationwide Mutual Insurance Company, to recover damages *See id.* ¶ 3. The trial court granted summary judgment to Nationwide, finding no factual basis on which Fricke could have been found negligent. *See id.* ¶ 4.

¶ 22 Fricke submitted an affidavit describing the accident, which supported the conclusion that she was not negligent. *See id.* ¶ 21. West American presented no evidence to suggest otherwise. *See id.* The trial court held that West American was not entitled to rest on the bare allegations of negligence in

its pleadings to defeat the motion for summary judgment, but was required to set forth facts to demonstrate a genuine issue for trial. *See id.*

> West American argue[d] that summary judgment was improper because a jury could have concluded from Fricke's affidavit that she bore some responsibility for the accident. West American argued that Fricke had a "duty to maintain control" and she may have violated that duty by not "keeping a firmer grip on the steering wheel," by not "reducing speed," or by not "taking evasive action" after Hiatt turned the wheel. *While such conclusions may be theoretically possible, West American created no genuine issue of fact on these issues because it failed to introduce any evidence from which a jury could arrive at such conclusion.* Absent such evidence, any finding of negligence on Fricke's part could have been based on nothing more than speculation.

*Id.* ¶ 22 (emphasis added). The Utah Supreme Court concluded that the trial court "properly granted summary judgment to Fricke on the issue of her alleged negligence." *Id.* ¶ 23. Again, the case before us can be distinguished because the Estate presented factual evidence of Contractor's negligent safety measures at the construction site, whereas in *Fricke,* West American presented no factual evidence.

¶ 23 In *Brown v. Wanlass,* 2001 UT App 30, 18 P.3d 1137, plaintiff Brown, a former American Fork city council member, sued several American Fork city employees for defamation, alleging they acted with malice in filing a grievance against him. *See id.* ¶ 1. Brown claimed the employees provided false information to the media. *See id.* ¶ 7. The employees submitted affidavits denying this allegation. *See id.* Brown failed to rebut the employees' denials with anything other than his own unsupported speculation. *See id.* "Conclusory affidavits that contain only unsubstantiated belief rather than personal knowledge are insufficient to defeat summary judgment." *Id.* Again, that case is different than the case before us. We are not dealing with conclusory, self-serving affidavits. Rather, the Estate's affidavits and

testimony from independent fact witnesses set forth numerous facts to support its theory that Contractor's negligent directions at the construction site caused Mrs. Scott's accident.

¶ 24 Finally, in *Clark v. Farmers Ins. Exch.,* 893 P.2d 598 (Utah Ct.App.1995), Clark, one of the drivers in a multi-car accident, sued the other drivers for damages when he sustained arm and knee injuries. *See id.* at 599. He was not injured in the initial collision, but only after he left his car to talk to another driver, when he was mysteriously thrown over the guardrail while cars continued to pile up. *See id.* at 600. The trial court granted summary judgment to all the defendants because no one saw how Clark was injured, and Clark did not know how he was injured. *See id.* Clark's own expert witnesses said he would not be able to determine the mechanism of Clark's injury without speculating or guessing. *See id.* at 601. The other expert witness "[could not] say for sure" which car struck Clark. *Id.* We affirmed the trial court's grant of summary judgment to the defendants. *See id.* Here again, Clark did not produce any facts to the summary judgment court that supported his theory of causation, whereas the Estate supports its claim with the factual assertions of three witnesses.

¶ 25 These cases illustrate why the Estate's case ought to be given to a jury: the Estate presented multiple facts from multiple witnesses that support its theory of causation. It is clear that the hole Contractor dug directly caused Mrs. Scott's death—that is, but for the hole, she wouldn't have fallen into it, and no one has contested the connection between the accident and her death. The question is whether the Contractor's safety plan was negligent and whether that negligence caused the accident. The Estate has presented an issue of fact sufficient to go before a jury to determine whether the Contractor was negligent in directing traffic through the construction site, and if so, whether that negligence caused Mrs. Scott's accident and subsequent death.

## CONCLUSION

¶ 26 Having concluded that the Estate has shown an issue of material fact sufficient to

overcome a motion for summary judgment, we reverse the trial court's grant of summary judgment in favor of Contractor and remand for a trial on the merits. We also remand for a factual determination of whether Mrs. Scott's statement to her husband was given under the stress of excitement caused by the accident.

¶ 27 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. McHUGH, Judges.