IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Lynn Harding and Eileen Harding, | ) | OPINION |
| | ) | |
| Plaintiffs and Appellants, | ) | Case No. 20100999-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Atlas Title Insurance Agency, Inc.; | ) | (August 23, 2012) |
| Randy Kidman; Dave White; Scott | ) | |
| Wilson; Jeremy Larkin; Pecan Ridge | ) | 2012 UT App 236 |
| Partners, LLC; Scott Nielson; and Roger | ) | |
| Cater, | ) | |
| | ) | |
| Defendants and Appellees. | ) | |

-----

Fifth District, St. George Department, 090501506
The Honorable James L. Shumate

Attorneys:     Samuel G. Draper, St. George, for Appellants
               Bryan J. Pattison, St. George, for Appellees Atlas Title Insurance
               Agency, Inc.; Randy Kidman; and Dave White
               Heath H. Snow and Stephen R. Schwendiman, St. George, for Appellees
               Scott Wilson and Jeremy Larkin

-----

Before Judges Voros, Orme, and Davis.

DAVIS, Judge:

¶1     Lynn and Eileen Harding appeal the trial court's grant of summary judgment in
favor of Atlas Title Insurance Agency, Inc. (Atlas Title); Randy Kidman; Dave White;

Jeremy Larkin; and Scott Wilson (collectively, Atlas),[1] in which it determined that the Hardings could not demonstrate the proximate cause element of the various causes of action without resorting to speculation. We reverse and remand.

BACKGROUND

¶2 On December 5, 2006, Pecan Ridge Partners, LLC (Pecan Ridge) purchased ten acres of property (the Initial Property) from the Hardings for $1,150,000. The Hardings seller-financed part of the purchase price and were given a trust deed from Pecan Ridge to secure the sum of $800,633.11, which was to be recorded in second position after another trust deed held by a group of investors to secure the sum of $372,713.67. Atlas conducted the closing on the sale but failed to record the Hardings' trust deed until September 11, 2007. Before the Hardings' trust deed was recorded, two additional trust deeds were recorded on the property, securing a total of $1,391,000, so by the time the Hardings' trust deed was recorded, it was in the fourth position of priority.

¶3 In a separate transaction, Pecan Ridge executed a second trust deed in favor of the Hardings on a second piece of property (the Second Property) to secure the sum of $750,000. In April 2008, Pecan Ridge and the Hardings entered into a new transaction wherein the Hardings exchanged their interest in the Initial Property and the Second Property for an interest in a third parcel of property (the Final Property) to secure the sum of $1,500,633.10, which interest was to be in second position to another interest securing the sum of $625,000. However, Pecan Ridge was ultimately unable to obtain sufficient funding for its development project and defaulted on the loan secured by the $625,000 trust deed. The holder of that trust deed foreclosed on the Final Property and extinguished the Hardings' interest in that property.

¶4 The Hardings sued Atlas for breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, civil conspiracy, negligence, and conversion, seeking nearly $2,500,000 in damages. Atlas brought two motions for summary judgment: the

---

1. Kidman and White are employees of Atlas, and Larkin and Wilson are principals of Pecan Ridge Partners, LLC, which is not a party to this appeal. Although Larkin and Wilson are not directly connected with Atlas, we refer to all of the defendants collectively as "Atlas" for convenience.

first on the conspiracy claim, and the second alleging that the Hardings could not demonstrate the proximate cause element with respect to the remaining claims. The trial court granted summary judgment in favor of Atlas on the conspiracy claim, and the Hardings do not challenge that ruling on appeal. The trial court also granted summary judgment in favor of Atlas on the other claims based on its conclusion that "determining causation on the facts and evidence presented could not be done without engaging in impermissible speculation."[2] The Hardings challenge this determination on appeal.

---

2. Larkin and Wilson joined only in the civil conspiracy summary judgment motion, but the trial court granted them summary judgment on the other claims as well and they join in defending that decision on appeal. Larkin and Wilson additionally contend that the Hardings did not present "any allegation against [them] which would indicate that either of them personally and/or individually engaged in any conduct meeting the elements of the[] causes of action" alleged by the Hardings apart from the civil conspiracy claim, and that "[w]ithout any facts or evidence implicating [them], the District Court's Summary Judgment Order should stand." We interpret this argument as asserting that even if we determine that proximate cause should have been considered by a jury, we should affirm the trial court's summary judgment ruling with respect to Larkin and Wilson on the alternative ground that other elements of the claims against them were not demonstrated as a matter of law. *See generally Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 ("It is well settled that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action . . . ." (internal quotation marks omitted)). Although Larkin and Wilson are principals of Pecan Ridge, the Hardings maintain that they participated in Atlas Title's failure to record the Hardings' interest in the Initial Property. On appeal, Larkin and Wilson have failed to make any specific argument regarding which elements of the other claims, apart from proximate cause, cannot be proven. Thus, we decline to consider Larkin and Wilson's alternative argument on appeal. *See generally State v. Garner*, 2002 UT App 234, ¶ 8, 52 P.3d 467 ("It is well established that Utah appellate courts will not consider claims that are inadequately briefed.").

ISSUE AND STANDARD OF REVIEW

¶5      The Hardings maintain that the undisputed facts support a reasonable inference of proximate cause and that their proximate cause argument does not depend on speculation.[3]  "Because summary judgment is granted as a matter of law, we review the trial court's ruling for correctness."  *Scott v. HK Contractors*, 2008 UT App 370, ¶ 6, 196 P.3d 635 (internal quotation marks omitted).  "We examine the evidence in the light most favorable to the losing party, and if that evidence *and the reasonable inferences drawn therefrom* would support a judgment in favor of the losing party, we must reverse."  *Goebel v. Salt Lake City S. R.R. Co.*, 2004 UT 80, ¶ 10, 104 P.3d 1185 (emphasis added).

ANALYSIS

¶6      "Generally, the question of proximate cause raises an issue of fact to be submitted to the jury for its determination."  *Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996) (internal quotation marks omitted).  Thus, "if there is any doubt about whether something was a proximate cause of the plaintiff's injuries, the court must not decide the issue as a matter of law."  *Goebel*, 2004 UT 80, ¶ 12.  Nevertheless, "proximate cause issues can be decided as a matter of law" in two circumstances:  "(i) when the facts are so clear that reasonable persons could not disagree about the underlying facts or about the application of a legal standard to the facts, and (ii) when the proximate cause of an injury is left to speculation so that the claim fails as a matter of law."  *Harline*, 912 P.2d at 439.

---

3.  The Hardings also argue that there are several disputed material facts that would preclude summary judgment:  whether the Hardings "provide[d] Atlas . . . with written recording instructions regarding the recording of the trust deed against the Initial Property," whether Atlas's failure to record their trust deed on the Initial Property was inadvertent, and whether the trust deed was "immediately recorded" after the oversight was brought to Atlas's attention.  However, none of these facts are material to the question of proximate cause, on which the trial court's summary judgment ruling turns, and in any event, this argument is rendered moot by our reversal of the trial court's summary judgment ruling on the other ground argued by the Hardings.

## I. The Hardings' Proximate Cause Argument Is Not Speculative.

¶7 Here, the trial court based its summary judgment ruling on its determination that causation could not be established "without engaging in impermissible speculation." We acknowledge that "[j]urors may not speculate as to possibilities; they may, however, make justifiable inferences from circumstantial evidence to find . . . proximate cause." *Lindsay v. Gibbons & Reed*, 27 Utah 2d 419, 497 P.2d 28, 31 (1972). "While it is sometimes subtle, there is in fact a difference between drawing a reasonable inference and merely speculating about possibilities." *State v. Hester*, 2000 UT App 159, ¶ 16, 3 P.3d 725, *abrogated on other grounds by State v. Clark*, 2001 UT 9, ¶ 14, 20 P.3d 300. "'[A]n inference is a deduction as to the existence of a fact which human experience teaches us can reasonably and logically be drawn from proof of other facts.'" *Id.* (quoting *Manchester v. Dugan*, 247 A.2d 827, 829 (Me. 1968)). "On the other hand, speculation is defined as the 'act or practice of theorizing about matters over which there is no certain knowledge.'" *Id.* (quoting *Black's Law Dictionary* 1407 (7th ed. 1999)). The difference lies in the existence of underlying facts supporting the conclusion. In the case of a reasonable inference, there is at least a foundation in the evidence upon which the ultimate conclusion is based; in the case of speculation, there is no underlying evidence to support the conclusion. Thus, so long as there exists sufficient evidence upon which a reasonable inference regarding proximate cause may be drawn, summary judgment is inappropriate. *See Scott*, 2008 UT App 370, ¶ 16 (explaining that a plaintiff "ought to have the opportunity to present its theory to the jury if it is supported by facts in the record and allow the jury to draw its own conclusions").

¶8 Keeping these principles in mind, the cases cited by Atlas, in which it was determined that the issue of proximate cause was too speculative to go before a jury, are distinguishable from the case at hand. For example, in *Goebel v. Salt Lake City Southern Railroad Co.*, 2004 UT 80, 104 P.3d 1185, the plaintiff theorized that a protuberance in the roadway at a railroad crossing caused him to veer into a narrow gap that had grown between two field panels at the crossing where his bicycle, which had relatively narrow wheels, became stuck and crashed. *See id.* ¶¶ 6, 13. The supreme court rejected this theory of proximate cause as impermissibly speculative, explaining "that the existence of the protuberance [did not] necessarily force[ the plaintiff] to steer into the gap" and that the plaintiff "could have steered his bicycle into the gap regardless of whether the protuberance existed at all." *Id.* ¶ 13. *Compare Mitchell v. Pearson Enters.*, 697 P.2d 240,

244-46 (Utah 1985) (acknowledging that negligence in hotel security could theoretically be a proximate cause of crimes committed in a hotel, such as where an assailant posed as a bellboy to gain access to a victim's room, but determining that where there was no evidence of forced entry and the victim could not testify, the evidence could not, without speculation, support an inference that the assailant had somehow breached the hotel's negligent security measures in order to gain access to the victim), *and Thurston v. Workers Comp. Fund*, 2003 UT App 438, ¶ 20, 83 P.3d 391 (rejecting a plaintiff's argument that the decedent's suicide was the result of negligence on the part of his home care workers because there was "no expert testimony or lay opinion that addresse[d] proximate cause" apart from guesses about what might have prevented the suicide), *with Scott*, 2008 UT App 370, ¶¶ 17-18 (determining that witness testimony that traffic direction within a construction site was "confusing," coupled with the injured driver's statement "that the barricades were confusing and caused her to travel in the wrong direction," was sufficient evidence to support an inference that the contractor's negligence in directing traffic caused the driver to drive into an open trench).

¶9      Unlike in *Goebel*, where the narrow gap was not such that the cyclist would have necessarily avoided it in the absence of the protuberance, the Hardings allege here that their decision to enter into the deal on the Final Property can be explained only by the fact that they had essentially lost their interest in the Initial Property as a result of Atlas's actions. The Hardings' causation argument is not speculative; it simply permits the jury to draw a logical inference from the facts. Specifically, the Hardings assert that if not for the fact that their interest in the Initial Property was dissolved by Atlas's failure to record the Hardings' interest before the other two interests securing a total of $1,391,000 were recorded ahead of that interest, it would have been illogical for them to have given up a second place interest in the Initial Property, where an interest securing only $372,713.67 had priority over theirs and where they had the resources to redeem that property in case the first priority creditor foreclosed, for a second place interest in the Final Property, where their interest was behind an interest securing $625,000 and they lacked the resources to protect their interest. Accepting this inference, which has a foundation in the evidence, as true, *see Goebel*, 2004 UT 80, ¶ 10, we cannot say that the Hardings were necessarily as likely to have "steered their bicycle into the gap," that is, given up their interest in the Initial Property in exchange for the interest in the Final Property, if their interest in the Initial Property had remained in second position as they anticipated. Atlas may be able to present contrary evidence that the Hardings would

have willingly traded their interest in the Initial Property for the interest they ultimately gained in the Final Property even had they been in second position with respect to the Initial Property as intended. However, a jury should be permitted to weigh the evidence and determine which inference is most appropriate in light of that evidence. *See Scott*, 2008 UT App 370, ¶ 16.

## II. Reasonable Persons Could Disagree as to Proximate Cause.

¶10    Atlas alternatively contends that "reasonable persons could not disagree," *Harline*, 912 P.2d at 439, about whether Atlas's actions caused the Hardings' damages. Atlas asserts that the Hardings' action of voluntarily giving up their interest in the Initial Property in exchange for an interest in the Final Property was an intervening act that released it from liability. Atlas admits that had Pecan Ridge defaulted on the Initial Property, Atlas may have been liable to the Hardings for losses they sustained with respect to the Initial Property as a result of the second and third place creditors being ahead of the Hardings in priority. But because the Hardings entered into a new deal with Pecan Ridge and were in second position with respect to the Final Property—a position they voluntarily accepted and which Atlas maintains was equal to their position with respect to the Initial Property—Atlas argues that any loss the Hardings sustained on their investment in the Final Property cannot be attributed to Atlas and is merely the result of "[t]he economy crash[ing] and real estate funding dr[ying] up."

¶11    However, we find unpersuasive Atlas's suggestion that a second position priority with respect to the Final Property was necessarily equal to a second position priority with respect to the Initial Property where the amount owed to the first position creditor, and thus, the amount necessary to redeem, was significantly greater on the Final Property than the Initial Property. It is not only the Hardings' position of priority that is relevant, but also the dollar amount in priority ahead of their interest. With respect to the Initial Property, the Hardings expected to be behind only $372,713.67. When Atlas failed to record the Hardings' trust deed, they ended up behind $1,763,713.67. In an attempt to improve that position—in which the amount ahead of the Hardings in priority exceeded the $1,150,000 for which the Initial Property was originally sold—the Hardings accepted a second place position with respect to the Final Property in which they were behind $625,000. It is this attempt to mitigate their

damages[4] that the Hardings allege was necessitated by Atlas's failure to record. While their new position was better than the one in which they were left with respect to the Initial Property when their trust deed was not recorded as it should have been, their ability to protect their interest in the Final Property was not as strong as their ability to protect their position with respect to the Initial Property had their trust deed been recorded immediately, as required.[5]  Essentially, it is the damage attributable to the Hardings' loss of their ability to protect their interest in the property in case of foreclosure that they allege was proximately caused by Atlas. Thus, if the jury finds that the Hardings would not have traded their interest if not for Atlas's failure to record, then Atlas could properly be found to have proximately caused the losses suffered by the Hardings as a result of their holding a second place interest in the Final Property rather than a second place interest in the Initial Property.

III. The Hardings' Decision to Enter into a New Agreement with Pecan Ridge Does Not Preclude a Finding that Their Damages Were Proximately Caused by Atlas.

¶12     In a final attempt to escape responsibility, Atlas asserts that the Hardings should have taken other steps to recover their original interest, such as "refus[ing] to release their trust deeds against the Initial [Property] and [Second Property] until they were paid in full on the underlying obligation," "insist[ing] on additional security in the form of personal guarantees from the principals of Pecan Ridge," or "insist[ing] that Atlas . . . fix the error" by working to get the second and third place interests on the Initial Property subordinated to the Hardings' interest.  Atlas argues that the Hardings' decision to enter into a new agreement with Pecan Ridge, rather than pursue their

---

4. According to the Hardings, this attempt to mitigate was made in the context of Pecan Ridge informing the Hardings "that Pecan Ridge would go under if the reconveyance was not done," an event that, in light of their fourth place priority, would certainly have resulted in the loss of the Hardings' entire interest in the Initial Property.

5. The Hardings also gave up their second place interest securing $750,000 in the Second Property in exchange for the interest in the Final Property.  The amount of the first place interest on the Second Property is unclear from the record, but it is a sum that the finder of fact may find relevant on remand.

remedies against Atlas or give Atlas an opportunity to cure its breach, severed the causal link between Atlas's actions and the Hardings' ultimate damages.

¶13    In support of this argument, Atlas cites *Mahmood v. Ross*, 1999 UT 104, 990 P.2d 933, in which a landowner lost his property to foreclosure because he was unable to make the final balloon payment on a loan. *See id.* ¶ 11.  The landowner asserted that he would not have lost his property had a judgment debtor not breached their settlement agreement by failing to make certain payments on the loan on the landowner's behalf. *See id.* ¶ 27.  However, the court pointed out that notices of default entered against the landowner as a result of the judgment debtor's failure to pay were "ultimately cured or canceled long before the balloon payment's due date," that it was the landowner's failure to refinance or sell the property and thereby make the balloon payment that resulted in his loss of the property, and that, while the judgment debtor's breach may have "adversely impacted [the landowner's] credit," the landowner presented no evidence to indicate that the breach prevented the landowner from refinancing. *See id.* ¶¶ 27-28.

¶14    Unlike in *Mahmood*, a case that was permitted to go to the jury, where there was no evidence showing a causal link between the judgment debtor's failure to pay the bank and the landowner's failure to make the balloon payment, the Hardings have presented evidence showing that their decision to give up their interest in the Initial Property in exchange for the interest in the Final Property was made in response to Atlas's failure to timely record their interest in the Initial Property.  Furthermore, while the *Mahmood* court did recognize the landowner's failure to mitigate his harm, *see id.* ¶ 37, it did not determine that such a failure would necessarily preclude a finding of proximate cause, as Atlas suggests the Hardings' alleged failure to mitigate should do here.[6]  As the Hardings explain, "[i]f the Hardings failed to mitigate damages or

---

6. Atlas interprets the trial court's discussion of mitigation as suggesting that a finding of proximate cause is precluded by a failure to mitigate.  However, this does not appear to have been the *Mahmood* court's focus in discussing the mitigation evidence.  Rather, the supreme court focused on what the landowner's specific failures indicated about proximate cause, pointing out that the evidence demonstrating a failure to mitigate "also show[ed] that [the judgment debtor]'s default did not cause [the landowner]'s loss

(continued...)

contributed to the loss, the jury needs to determine the extent of the Harding[s'] fault and what effect that has on damages," but the Hardings' actions do not nullify Atlas's role in causing their damages.

CONCLUSION

¶15     Thus, we conclude that the trial court erred in granting summary judgment in favor of Atlas based on the Hardings' alleged inability to demonstrate proximate cause with respect to the breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, negligence, and conversion causes of action.  We therefore reverse the trial court's summary judgment ruling with respect to those claims and remand for further proceedings.

_____
James Z. Davis, Judge

-----

VOROS, Associate Presiding Judge (concurring):

¶16     I concur in the majority opinion.  I write separately only to explain why, in my judgment, *Mahmood v. Ross*, 1999 UT 104, 990 P.2d 933, does not require affirmance.

_____

6. (...continued)
of the . . . property."  *Mahmood v. Ross*, 1999 UT 104, ¶ 37, 990 P.2d 933.  It was this lack of a link between the judgment debtor's default and the landowner's loss, as demonstrated in part by the mitigation evidence, that made summary judgment on the proximate cause issue appropriate, not the landowner's failure to mitigate in and of itself.  Here, we do not agree with Atlas that the Hardings' failure to take the steps recommended by Atlas above, *see supra* ¶ 12, similarly demonstrates that the causal link between Atlas's actions and the Hardings' loss cannot be shown.

¶17 The present case does resemble *Mahmood*. In both cases, the plaintiffs of their own volition moved from a bad situation caused by defendants to another situation that also came to a bad end. However, Mahmood's loss was within his control, and in fact resulted from his own action. He defaulted on the Equitable loan even though he could have sold half the property, made the balloon payment, and retained the other half of the property. *See id.* ¶¶ 36–37. "This evidence," the supreme court concluded, "not only demonstrates that Mahmood failed to mitigate his damages, but it also shows that Ross's default did not cause Mahmood's loss of the . . . property." *Id.* ¶ 37. That Mahmood could have prevented his own loss is thus central to the rationale of *Mahmood*.

¶18 Atlas points to no equivalent act on the part of the Hardings. While Mahmood lost his property because he defaulted, the Hardings maintain that they lost their security interest in the Final Property because Pecan Ridge defaulted. I would not extend the holding of *Mahmood* to a situation where plaintiffs could not prevent their loss. Of course, Defendants are free on remand to contend that the Hardings are at least partially to blame for their damages. Even the Hardings recognize that "[i]f the Hardings failed to mitigate damages or contributed to the loss, the jury needs to determine the extent of the Harding[s'] fault and what effect that has on damages."

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

-----

ORME, Judge (concurring in part and dissenting in part):

¶19 I concur in the court's opinion as it pertains to all of the defendants except for Larkin and Wilson. I would affirm the entry of summary judgment in their favor.

¶20 I come at the subject dealt with in note 2 of the lead opinion from a different perspective. In my view, the Hardings have demonstrated on appeal that the trial court

erred in granting summary judgment to the other defendants, for the reasons ably explained in the lead opinion. They have not persuaded me, however, that there was any such error with respect to Larkin and Wilson. They were not employees of Atlas Title and could in no way, given the legal theories still in play, be responsible for its negligent failure to record the Hardings' initial trust deed in accordance with the escrow instructions entrusted to it.

¶21 Insofar as the Hardings claimed that some connivance among Larkin, Wilson, and Atlas Title induced Atlas Title not to discharge its escrow duties with fidelity, that claim was resolved against them with the entry of summary judgment on their civil conspiracy claims. And as noted in the lead opinion, that aspect of the decision below has not been appealed by the Hardings. Accordingly, with the demise of the Hardings' civil conspiracy claims, there is no viable legal theory for how Larkin and Wilson are legally responsible for Atlas Title's negligence. In my view, then, Larkin and Wilson should be let off the hook at this point and spared the expense and inconvenience of further litigation.

_____
Gregory K. Orme, Judge