**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ROBERT D. GERINGER,

     Plaintiff - Appellant,

v.

D. RAY STRONG, in his capacity as
Liquidating Trustee of the Liquidating
Trust for the Consolidated Legacy Debtors,
the Liquidating Trust for Castle Arch
Opportunity Partners I, LLC, and the
Liquidating Trust for Castle Arch
Opportunity Partners II, LLC,

     Defendant - Appellee.

No. 17-4190
(D.C. No. 2:16-CV-00391-TC)
(D. Utah)

_____

**ORDER AND JUDGMENT**<sup>*</sup>
_____

Before **PHILLIPS**, **KELLY**, and **CARSON**, Circuit Judges.
_____

This case concerns the sale of land located in Smyrna, Tennessee (the Smyrna

Property). The parties reached an initial agreement concerning the sale and outlined

the sale's general terms in a Memorandum of Understanding (MOU). After additional

negotiations, the parties executed a land-sale Agreement (the Agreement) which

improved upon the MOU by further detailing the sale's specific terms. Important to

_____

     <sup>*</sup> This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

this appeal, the Agreement contains an integration clause. The integration clause states that the Agreement is the "sole and entire agreement of the parties" and that "[a]ll prior discussions, negotiations and agreements are merged herein and have no further force or effect." Appellant's App. at 474.

The issue in this case is whether the Agreement, through the integration clause, voids the MOU's terms. We hold that it does. The MOU lost all legal effect once the Agreement was finalized. Thus, the district court correctly dismissed a breach-of-contract claim premised on the MOU's terms. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Castle Arch Real Estate Investment Company (CAREIC) was a company that purchased, entitled, and resold undeveloped land. Robert Geringer was the president of CAREIC for much of the company's existence. He resigned from his position in July 2009. In October 2011, CAREIC filed for Chapter 11 bankruptcy. The bankruptcy court appointed Ray Strong (the Trustee) as CAREIC's Chapter 11 trustee.

The Trustee and Geringer began mediation in the hope of resolving several potential claims that the Trustee held against Geringer. During these sessions, Geringer expressed an interest in buying property from CAREIC at an above-market price. Specifically, Geringer expressed interest in a tract of CAREIC-owned property located in Smyrna, Tennessee.

2

But Geringer's plan had a hitch. The bankruptcy court had already approved a contract for the sale of the Smyrna Property to another company, DSSIII Holding Company, LLC. Geringer was aware of this but was undeterred. Geringer believed that the Trustee could terminate the court-approved contract with DSSIII. The court-approved contract enabled the Trustee to terminate the contract if DSSIII failed "to act in good faith and with commercially reasonable diligence to pursue" several specific milestones. Appellant's App. at 446. In Geringer's view, DSSIII had failed to meet several of the enumerated milestones, and, thus, the Trustee could terminate the contract. As this appeal foreshadows, things did not go as Geringer planned.

On May 20, 2015, Geringer and the Trustee memorialized the general terms of the Smyrna Property's potential sale to Geringer in a MOU. The MOU stated that the agreement was subject to the bankruptcy court's approval and "the Trustee's ability to terminate the current purchase contract" of the Smyrna Property with DSSIII. *Id.* at 28. Geringer agreed to purchase the property for $2,225,000.[1] In exchange, the parties agreed to a mutual general release of all potential claims. The MOU also stated that the "Trustee will within 5 days provide notice of termination of the contract to sell [the] Smy[r]na [property] to DSSIII and will provide notice of this sale and of the motion to approve this sale to DSSIII Holding Co., LLC." *Id.* at 28.

On the same day that the MOU was signed, the Trustee's counsel e-mailed Geringer's counsel seeking clarification about the notice requirement. The e-mail

---

[1] By contrast, DSSIII contracted to buy the property for $1,500,000.

stated, "We're intending to send [the notice to DSSIII] within five days of the time we sign the sales agreement . . . is that ok?" *Id.* at 112. Geringer's counsel quickly responded, "That's fine, the sooner the better I would think. I'm on a conference call, will call you later to understand this ambiguity[.]" *Id.* The record does not disclose whether this call ever took place.[2]

After additional negotiations, on June 30, 2015, the parties signed the Agreement which further specified the terms of the proposed Smyrna Property sale to Geringer. In line with the Trustee's understanding of the notice requirement, the Agreement stated that "[o]n June 30, 2015, the Liquidating Trustee served a Notice of Termination of Real Estate Purchase and Sale Agreement on DSSIII in accordance with its duty as a fiduciary to accept any higher and better offers for the purchase of the Property." *Id.* at 464. Like the MOU, the Agreement specified that Geringer would purchase the Smyrna Property for $2,225,000 and that the parties would "execute a mutual general release" of all potential claims. Unlike the MOU, the Agreement contained an integration clause. That clause provides:

> This Agreement constitutes the sole and entire agreement of the parties and is binding upon and shall inure to the benefit of Seller and Purchaser, their respective heirs, successors, and legal representatives and permitted assigns . . . All prior discussions, negotiations and agreements are merged herein and have no further force or effect.

*Id.* at 474.

---

[2] On May 29, 2015, the Trustee e-mailed DSSIII and stated that it did "not think it is in our mutual best interests to continue to pursue this transaction." Appellant's App. at 86.

As the Agreement required, the Trustee moved the bankruptcy court to terminate the contract with DSSIII and approve the Agreement with Geringer. DSSIII immediately opposed the Trustee's motion and requested an emergency hearing. The bankruptcy court granted DSSIII's request and scheduled a hearing for July 14, 2015.

At the hearing, the Trustee argued that DSSIII had failed to fulfill its contractual obligations. Specifically, DSSIII had not provided written notice that it was able to close on the property, which, in the Trustee's opinion, constituted a breach of the contract. Thus, the Trustee claimed he had the right to terminate the contract.

The bankruptcy court cut short the Trustee's argument. The court noted that DSSIII had "a right to rely on orders of this Court" and stated that it was "not going to allow the trustee on the state of the record to sell the property to somebody else when [DSSIII] indicates that it is ready, willing, and able to perform according to the contract that it signed and [the court] approved." Appellant's App. at 275–76. Under the court-approved contract, DSSIII had until July 30, 2015, to close on the sale. The court effectively denied the Trustee's motion by indefinitely continuing any hearing or ruling on the motion to terminate the contract with DSSIII. As a result, Geringer was not able to buy the Smyrna Property.

Geringer sued the Trustee in federal district court. Geringer claimed that the Trustee violated the MOU's terms when it failed to notify DSSIII by May 25, 2015, that it intended to terminate the court-approved contract. Geringer also asserted a

5

claim for breach of the implied covenant of good faith and fair dealing. The Trustee moved for summary judgment, and the district court granted the Trustee's motion.

The court dismissed Geringer's claims with prejudice, holding that the MOU had no legal effect and, as a result, any potential breach of the MOU could not form the foundation for a legally cognizable claim. In the alternative, the court held that Geringer had failed to demonstrate that any potential breach of the MOU had caused his claimed damages. To that end, the court noted the lack of supporting evidence that the bankruptcy court would have acted any differently had the Trustee notified DSSIII by May 25, 2015, of its intent to terminate the contract. Geringer timely appealed.

## DISCUSSION

This court reviews de novo a district court's grant of summary judgment. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1536–37 (10th Cir. 1995). "Summary judgment is appropriate if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Id.* at 1537 (internal citation omitted). In this case, the lower court's jurisdiction was premised on diversity of citizenship. Thus, when considering whether summary judgment is appropriate, we will apply the substantive law of the forum state—in this case, Utah—and federal procedural law. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017).

Geringer attacks the district court's ruling on two fronts. First, Geringer claims that the MOU remains legally binding—despite the Agreement's integration clause—

6

and that the court erred by finding otherwise. Second, Geringer argues that there is a genuine issue of material fact whether the Trustee's breach of the MOU's terms caused his damages. We address both arguments below.

## I.     The Agreement's integration clause invalidates the MOU's terms.

We first address whether the Agreement, and its integration clause, supplants the MOU's terms. We hold that it does. The integration clause strips the MOU of all legal effect, and the district court correctly held that Geringer's breach-of-contract claim fails as a matter of law.

Under Utah law, when parties "have reduced to writing what appears to be a complete and certain agreement, it will be conclusively presumed, in the absence of fraud, that the writing contains the whole of the agreement between the parties." *Tangren Family Trust v. Tangren*, 182 P.3d 326, 330 (Utah 2008) (internal citation omitted). Such a "conclusive presumption" applies in this case. The Agreement's integration clause expressly states that the Agreement is the "sole and entire agreement" between the parties. Appellant's App. at 474. Moreover, it declares that "[a]ll prior discussions, negotiations and agreements are merged" into the Agreement and "have no further force or effect." *Id.* Thus, we conclusively presume that the integration clause means what it says: all previous agreements—including the MOU—are of no effect.[3]

---

[3] The Supreme Court of Utah has recognized that an integration clause will not carry a conclusive presumption of validity when it is alleged to be "a forgery, a joke, a sham, lacking in consideration, or where a contract is voidable for fraud, duress,

Attempting to steer us away from this conclusion, Geringer points us to *Trugreen Companies, LLC v. Scotts Lawn Service*, 508 F. Supp. 2d 937 (D. Utah 2007). In *Trugreen*, the court held that "for a contract to be merged into another, it must be plainly shown that such was the intent of the parties; and this is usually where the later contract fully covers an earlier one." *Id.* at 950 (internal citation omitted). Geringer argues that the Agreement does not fully cover the MOU and, in accordance with *Trugreen*, the Agreement does not supplant the MOU. We do not find Geringer's argument convincing.

While overlap might, in some cases, demonstrate the parties' intent to merge an earlier contract into a later one, it is not the only way to demonstrate such intent. In *Trugreen*, the court approvingly cited Idaho case law which acknowledged that a later agreement will supplant an earlier one if the new agreement either "explicitly rescind[s] the earlier contract, deal[s] with the subject matter of the former contract so comprehensively as to be complete within itself and to raise the legal inference of substitution, or present[s] such inconsistencies with the first contract that the two cannot in any substantial respect stand together." *Id.* (citing *Silver Syndicate, Inc. v. Sunshine Min. Co.*, 611 P.2d 1011, 1020 (Idaho 1979)). All those scenarios exist here.

First, the Agreement explicitly rescinds the MOU. The Agreement's integration clause states that it is the "sole and entire agreement" between the parties

---

mistake, or illegality." *Tangren*, 182 P.3d at 331. Geringer does not make any of those claims here.

8

and that all previous agreements "have no further force or effect." Appellant's App. at 474. As the *Trugreen* court acknowledged, such language works to supplant a previous contract with a new one. *See* 508 F. Supp. 2d at 950.

Second, the Agreement comprehensively covers the MOU to such an extent that it raises the "legal inference of substitution." *See id.* For example, both documents cover the sale of the Smyrna Property to Geringer. They both detail that Geringer will pay $2,225,000 for the property and will receive a general release of all potential claims. And both documents were contingent on both the bankruptcy court's approval and the Trustee's ability to terminate its previous contract with DSSIII. The Agreement covers the same subject matter as the MOU.

Geringer argues that the two contracts do not fully overlap because the Agreement "requires a closing of a purchase by Mr. Geringer for there to be a settlement," while the MOU "contemplates a settlement of the claims even in the event the sale does not proceed." Appellant's Opening Br. at 21–22. A close reading of both documents undercuts Geringer's claim.

Both the MOU and the Agreement contemplate the same three possible outcomes. First, they both contemplate that the bankruptcy court might not approve the sale to Geringer and that the Trustee will have to honor its contract with DSSIII. Both documents also contemplate that Geringer could be outbid by a third party. Finally, both documents lay out what happens if the bankruptcy court terminates the contract with DSSIII, approves the sale to Geringer, and Geringer remains the high-

9

bidder. Contrary to Geringer's claim, the documents do not contemplate different outcomes.

Finally, the Agreement and the MOU present "such inconsistencies . . . that the two cannot in any substantial respect stand together." *See Trugreen*, 508 F. Supp. 2d at 950. The MOU required the Trustee to notify DSSIII of its intent to terminate the court-approved contract by May 25, 2015. The Agreement states, with both parties' apparent approval, that the Trustee had provided such notification on June 30, 2015. The inconsistency cannot be reconciled. Either the parties agreed that the notice was due on May 25, 2015, or instead that it was due on June 30, 2015, but it cannot be both.

*Trugreen* only further supports our conclusion that the MOU was stripped of all legal significance and could not be revived once the Agreement was finalized.[4] The integration clause's plain language should be taken at face value, and the MOU has no "force or effect." Appellant's App. at 474. Thus, the district court correctly concluded that Geringer's breach-of-contract claim fails as a matter of law.

---

[4] In his reply brief, Geringer argues for the first time that no integration occurred because the contract into which the MOU merged is void. The general rule in this circuit "is that a party waives issues and arguments raised for the first time in a reply brief." *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (quoting *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009)). Arguments raised for the first time in a reply brief deprive the appellee of the opportunity to respond. Thus, we deem Geringer's argument waived and decline to consider it.

**II.     Geringer fails to demonstrate that the Trustee's alleged breach caused his harm.**

While we need not address the issue, we will also consider whether Geringer presents sufficient evidence of causation to avoid summary judgment. Under Utah law, summary judgment is appropriate "when the proximate cause of an injury is left to speculation so that the claim fails as a matter of law." *Harding v. Atlas Title Ins. Agency, Inc.*, 285 P.3d 1260, 1263 (Utah Ct. App. 2012). We hold that, even viewing the facts in the light most favorable to Geringer, he has not presented sufficient evidence to raise a genuine issue of material fact that the bankruptcy court would have acted any differently had the Trustee complied with the MOU's notice deadline.

Geringer claims that "there is at least a factual question as to whether the bankruptcy court would have approved" the Agreement had the Trustee acted sooner, but he does not point us to any record citations demonstrating that this is the case. Appellant's Opening Br. at 42. This failure is likely due to the fact that no such support can be found in the record. To the contrary, the record reveals that the bankruptcy court likely would have acted the same way regardless of when the Trustee notified DSSIII of its intent to terminate the contract.

At the hearing on the Trustee's motion, the Trustee argued that DSSIII was in breach of the contract. The bankruptcy court ignored the claim. Instead, the court was adamant that the parties had a "right to rely on orders of this Court approving contracts" and that, as a result, it was "not going to allow the trustee on the state of the record to sell the property to somebody else when the buyer indicates that it is

11

ready, willing, and able to perform according to the contract that it signed and that I approved." *Id.* at 275–76. The court noted that DSSIII had until July 30, 2015, to close on the Smyrna Property, and it continued any consideration of the Trustee's motion to permit DSSIII to buy the property if it desired. The court was steadfast in honoring the previously approved contract and, in the face of such commitment, it would be purely speculative to believe that earlier notification would have changed the court's view. Thus, Geringer has failed to provide any evidence that the Trustee's alleged breach of the MOU caused his damages. *See Harding*, 285 P.3d at 1263.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.

Entered for the Court


Gregory A. Phillips
Circuit Judge